IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 30, 2003

## STATE OF TENNESSEE v. SHAWN RAFAEL BOUGH

**Direct Appeal from the Criminal Court for Knox County**
**No. 68041     Richard R. Baumgartner, Judge**

_____

**No. E2002-00717-CCA-R3-CD**
**January 12, 2004**
_____

The appellant, Shawn Rafael Bough, was convicted by a jury of felony murder and especially aggravated robbery. A co-defendant was tried separately. The trial court immediately sentenced the appellant to life in prison for the felony murder conviction. After a sentencing hearing, the trial court sentenced the appellant to a sentence of twenty-one years at 100% for the especially aggravated robbery conviction, to be served concurrently with the life sentence. The trial court denied the appellant's motion for new trial, amended motion for new trial, and second amended motion for new trial, and he appeals. Because the first motion for new trial was not timely filed in regards to the felony murder conviction and an untimely notice of appeal resulted, we determine that the appellant has waived all issues except for sufficiency of the evidence in regards to the felony murder conviction, which we choose to address in the interests of justice. Because the amended motion for new trial and second amended motion for new trial were likewise untimely, we hold that the only other issues properly before this Court are those raised in the initial motion for new trial that relate to the conviction for especially aggravated robbery. Those issues include: (1) whether the trial court erred in allowing the State to comment on the appellant's failure to produce a witness; (2) whether the evidence was insufficient to support the conviction for especially aggravated robbery; and (3) whether the trial court erred in failing to instruct the jury regarding the corroboration of accomplice testimony and out-of-court confessions. After a thorough review of the record, we find the evidence sufficient to sustain the convictions and affirm the judgment of the trial court. As to the remaining issues, we find no reversible error and, therefore, affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender and John Halstead, Assistant Public Defender for the appellant, Shawn Rafeal Bough.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, Assistant Attorney General; Randall E. Nichols, District Attorney General; and G. Scott Green, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Factual Background

On December 19, 1998, the students at Knoxville College started their winter break. They were required to vacate student housing until the spring semester. Two sisters from New Jersey, Deanna and Edie Jones, were students at Knoxville College at the time. After packing up their belongings, the two were picked up by a friend and his brother. They dropped off some of their possessions at the apartment of Edgar Johnson, Edie Jones's boyfriend, which was located in Ridgebrook housing development, and made plans for the remainder of the evening. Edie and Deanna Jones planned to stay the night in Knoxville before catching their flight home the following morning.

After going to the store to get alcohol and snacks, the sisters and their two friends stopped at a liquor store. The party then went to the Expo Inn off of Ailor Avenue in Knoxville where Edie Jones rented room 207 for the night. Room 207 was located directly above yet slightly behind the hotel's lobby and front desk area. Terry Williams was the employee on duty when Edie Jones and her sister checked-in to the Expo Inn.

While checking-in to the hotel, Deanna Jones saw the appellant and co-defendant, Craig Shears, in the parking lot and invited them to come up to their room later on that evening. Deanna and Edie Jones knew both the appellant and Craig Shears because they were students at Knoxville College. The two sisters, the friend, and the friend's brother hung out in the room, drinking alcohol and smoking marijuana. At some point, Deanna Jones fell asleep. While she was asleep, the friend and his brother left the hotel room for the night.

Montes Best relieved Terry Williams at the front desk of the hotel at approximately 11:00 p.m. Montes Best worked at the Expo Inn until around seven-thirty a.m. the next morning and was working at the desk when two African-American men who claimed to be looking for a friend in room 207 approached the locked front doors late at night. Deanna and Edie Jones remember the defendant, co-defendant and another male student stopping by room 207 for a few minutes before midnight. The appellant and Craig Shears stopped by again after midnight, asking to use the telephone. The appellant used the telephone to call several airlines. He attempted to secure a flight from Tennessee through Chicago to California, his home state. Deanna Jones was in the restroom during part of the appellant's telephone conversation, but was able to hear most of what the appellant was saying on the telephone. When she exited the bathroom, she noticed a gun underneath the

corner of the bed where the appellant was sitting. She told the appellant not to forget his gun; he thanked her and put the gun in his sock. At that time, the appellant and Craig Shears left the room.

Sometime after midnight, the appellant and Craig Shears again returned to room 207 for the third time, again to use the telephone. Deanna Jones heard the appellant ask the person on the other end of the phone about getting a ride. Edie was asleep. The two men left the room after the phone call.

The appellant and Craig Shears came back to room 207 for a fourth and final time to tell Deanna and Edie Jones that they were leaving. At trial, Deanna Jones testified that it was "still dark" when the two men left the hotel room for the last time. However, the statement she gave to the police on the day of the incident indicates that the two left the hotel room around 9:00 a.m. on December 20, 1998.

During the course of the evening, Deanna Jones drank approximately five cups of a punch made from liquor and smoked a marijuana "blunt" the size of a small cigar that she shared with everyone in the room. Edie Jones smoked approximately two to three marijuana "blunts" with her friend and his brother and drank a small amount of alcohol. She complained of a head cold and claimed to sleep a great deal of the evening.

 Montes Best, the desk clerk, spoke with Billy Oldham, the person responsible for relieving her post, via telephone the morning of December 20, 1998. He gave her permission to lock up and go home before he arrived at the hotel between eight and eight-thirty a.m.

When Edie Jones woke up early on the morning of December 20, 1998, she could not find matches or a lighter to light a cigarette, so she walked down to the lobby/front desk area of the hotel to see if she could get a light for her cigarette. She spoke with the gentleman in the lobby, Billy Oldham. He offered her a cup of coffee. She declined, looked at several of the fliers on the bulletin board in the lobby, and headed back upstairs to get ready for her flight. Around ten a.m., Deanna and Edie heard something downstairs in the lobby area like three or four gunshots.

Just after ten a.m. on December 20, 1998, officers of the Knoxville Police Department were dispatched to the Expo Inn in response to a 9-1-1 call from the hotel's clerk that there had been a robbery and shooting. According to the victim, Billy Oldham, two tall, thin black males from room 207 demanded money and shot him. According to the Knoxville County Medical Examiner, the victim died as a result of complications from multiple gun shot wounds. The victim was shot four times, once in the chest under the right arm, once in the upper left back, and once in each side of the lower back.

Dante Smith picked up the appellant and Craig Shears at the Expo Inn shortly after ten a.m. on December 20, 1998, after being called repeatedly by the appellant. Mr. Smith was Edgar

Johnson's roommate.[1] He drove to the hotel where he saw the appellant and Craig Shears running out of the lobby. The appellant was carrying a plastic tub which contained envelopes. Dante Smith testified that:

> He [the appellant] was just talking a lot. He kept on saying something about he thinks he killed - - or he thinks he shot somebody inside. He wasn't sure, but - - he said he shot him, but he wasn't sure if he killed him or not. . . . He was saying something about, 'If you cut the phone lines, I did - - I did the rest,' or, 'I was doing the rest,' or something like that.

Mr. Smith drove the two men towards Knoxville College where he stopped the car and asked them to get out because he "ha[d] never done anything like this." Mr. Smith then drove back to his apartment at Ridgebrook.

The appellant and Craig Shears later showed up at Mr. Smith's Ridgebrook apartment and started counting money from the plastic container they carried from the hotel. The appellant asked Mr. Smith if he would "hide the gun for him." Mr. Smith refused, asking the appellant if he was "crazy." The appellant also asked Mr. Smith to give the two a ride to the bus stop or airport. Again, Mr. Smith refused. The appellant and Craig Shears left $25-30 for Mr. Smith. He did not take the money, but gave it to someone who needed the money to travel home for the holidays.

Investigator A.J. Loeffler arrived at the Expo Inn around 10:15 a.m. Almost immediately, he got into the ambulance with the victim. The victim was "gasping for air" and kept saying "I'm losing it. I am going out. I am losing it." The victim stated that he "was working the desk, and two guys came in from room 207, asked me for my money, and then shot me." The victim described the perpetrators as "two black males, tall, slender" with "a little bit of facial hair." He told Officer Loeffler that he thought that the two men got into a "brown Japanese model" car. That car was later identified as the car of Rayetta Woodruff.

After interviewing the victim, Officer Loeffler went back to the Expo Inn to observe the scene of the incident and collect more information. He noted that the telephone lines in the lobby were cut as well as those in the adjacent offices of rooms 105 and 106. The crime scene specialist, Joe Cox, found three federal .22 long rifle cartridge cases behind the front desk and two cartridge cases located elsewhere in the lobby area. The detail tape on the cash register indicated that the "no-sale" button was pushed at 10:03 a.m. on December 20, 1998.

After inspecting the scene of the crime, Officer Loeffler proceeded to interview Deanna and Edie Jones. He took the two women to the bus station and airport, hoping that they could identify the appellant and Craig Shears. Officer Loeffler located a reservation on Greyhound for Craig Shears to Chicago at 7 p.m. on December 20, 1998. Officer Loeffler boarded the bus, but did not find Craig Shears on board.

---

[1] Edgar Johnson was Edie Jones's boyfriend.

According to an employee with American Eagle Airlines in Knoxville, the guest passenger list from a flight from Nashville to Chicago on December 20, 1998 contained the names of the appellant and Craig Shears and showed that the two men were seated in seats 23A and 23B. The reservations indicated that the tickets were purchased at the same time.

The appellant called Mr. Smith in January of 1999. He asked Mr. Smith if he talked to the police about the incident. Mr. Smith told the appellant he had not spoken with the police. A few months later, Mr. Smith talked to several detectives regarding his knowledge of the incident.

Isaiah Dixon has known the appellant since they were eleven years old. They lived near each other in San Francisco and attended school together. Mr. Dixon saw the appellant in California sometime after the December incident when the appellant told Mr. Dixon that he was on bail for a homicide charge in Tennessee. Mr. Dixon stated that the appellant "told me that he was trying to pull a heist, and there was [sic] things that went wrong . . . . The man was taking too long, so he let him have it." Mr. Dixon also stated the appellant "let him [the clerk] have it" because "he was taking too much time to open the safe. He was stalling." The appellant told Mr. Dixon that he got a "couple thousand" in the heist, but that "he had went [sic] to jail shortly after that for like a warrant or something, and when he had got [sic] back to school, all the money wasn't there." At the time of trial, Mr. Dixon was incarcerated in a California prison as a result of a guilty plea for second degree burglary.

On May 6, 1999, the Knox County Grand Jury returned a multiple-count indictment against the appellant and Craig Shears for one count of first degree murder, one count of felony murder, and one count of especially aggravated robbery.

The appellant was arrested on May 9, 1999, at his mother's home in San Francisco, California. On May 8, 1999, Lisa Curry with the San Francisco Police Department phoned the appellant's home posing as Deanna Jones. She was told where to find the appellant and instructed to call back the next day. On May 9, 1999, the police surrounded the house shortly before Officer Curry phoned the appellant, again posing as Deanna Jones. The appellant was apprehended at the back door of the residence.

Officer Loeffler was present during the arrest and recorded a conversation with the appellant later that day. During the conversation, the appellant indicated that he stayed at "a hotel" with "Deanna and Edie" the night he vacated the dorms for Christmas break and "left in the morning . . . about 9:30." He stated that "the home boy gave me a ride to Nashville. I took my plane from there." He told Officer Loeffler that the guy who gave him and Craig Shears a ride was named "Ted" and that he drove a van. According to the appellant, "Ted" was a guy who "just come [sic] up to the school, you know . . . he just give [sic] us rides and stuff so I asked him could he give me a ride . . . the night before . . . he said alright, I'll be there." He stated that "Ted" picked him and Craig Shears up at around 9:00 or 9:30 a.m. on December 20, 1998 and took them straight to Nashville where he dropped them off at the airport after making sure their flights were not delayed.

Following a jury trial on June 11 and 12, 2001, the appellant was convicted of felony murder and especially aggravated robbery.[2] Immediately following the announcement of the jury verdict, the trial court imposed a mandatory life sentence for the felony murder. The trial court postponed sentencing on the especially aggravated robbery charge until a sentencing hearing on August 3, 2001. The trial court sentenced the appellant to a twenty-one year sentence for the especially aggravated robbery conviction, to run concurrently with the life sentence. Trial counsel filed a motion for new trial at the conclusion of the hearing alleging: (1) that the evidence was insufficient to find the appellant guilty of felony murder and/or especially aggravated robbery; (2) that the state committed misconduct and the trial court erred in permitting the state to argue a missing witness; (3) that the trial court erred in failing to include a jury instruction regarding the missing witness argument; (4) that there was not sufficient corroboration of the testimony of Dante Smith to sustain a finding of guilt; and (5) that there was not sufficient corroboration of the appellant's alleged confession to Isaiah Dixon to establish guilt.

The trial court held a hearing on the motion for new trial on September 27, 2001. Trial counsel informed the court at that time that the appellant was indigent, would therefore be unable to retain him on appeal, and that he wished to withdraw from the representation. The trial counsel asked that the trial court appoint an attorney for any appeal which may be necessary. The minute entry from the September 27, 2001 hearing reflects that the trial court denied the motion for new trial and appointed a public defender to represent the appellant on appeal.

On October 11, 2001, the appellant's newly appointed counsel filed an amended motion for new trial which asked the trial court to direct that a transcript be prepared "so that the newly appointed counsel . . . [could] properly preserve all objections and errors for the appellate courts." The amended motion for new trial did not raise any new substantive grounds for relief.

On October 18, 2001, the trial court conducted a hearing on the amended motion for new trial wherein the attorneys argued whether the amended motion for new trial was proper and/or timely. As a result of the hearing, the trial court ordered that the transcript of the pre-trial motions, trial, and motion for new trial proceedings be prepared.

On March 6, 2002, a second amended motion for new trial was filed alleging several new substantive grounds for relief. On March 13, 2002, the trial court held a hearing on the second amended motion for new trial wherein the attorneys again argued whether the amended motion for new trial was proper and/or timely. The trial court overruled the amended motion for new trial on March 21, 2002. The appellant filed a notice of appeal on March 21, 2002.

The appellant raises the following issues on appeal: (1) whether the trial court erred in allowing the State to comment on the appellant's failure to produce a witness; (2) whether the trial court erred in failing to instruct the jury regarding the corroboration of accomplice testimony; (3) whether the trial court erred by allowing the State to exhibit the appellant and his co-defendant to

---

[2]The appellant's case and Craig Shears's case were severed for trial.

the jury prior to the introduction of the 9-1-1 tape; (4) whether the trial court erred by allowing the introduction of the 9-1-1 tape into evidence; (5) whether the trial court erred by allowing jurors to take notes during the trial; (6) whether the trial court erred by allowing the State to infer the criminal conduct of the appellant due to his association with a known criminal; (7) whether the evidence was insufficient to support a guilty verdict; and (8) whether the cumulative effect of the errors requires that the appellant be granted a new trial.

<u>Timeliness of Motion for New Trial, Amended Motion for New Trial, and Notice of Appeal</u>

As a preliminary matter, this Court must determine if the appellant waived the majority of the issues with respect to his conviction for felony murder due to his failure to file a timely motion for new trial. Although not initially raised by either party on appeal, this Court ordered the parties to file supplemental briefs in order to address the timeliness of the motion for new trial, the amended motion for new trial and, therefore, the notice of appeal. The appellant contends that the motion for new trial, amended motion for new trial, second amended motion for new trial and, thus, the notice of appeal were timely. Alternatively, the appellant asks this Court to waive the timely filing of the notice of appeal pursuant to Tennessee Rule of Appellate Procedure 4(a). The State argues that the appellant has waived all claims with respect to the felony murder conviction with the exception of sufficiency of the evidence due to the untimely filing of the motion for new trial and, thus, the notice of appeal.

Tennessee Rule of Criminal Procedure 33 (b) provides that "a motion for a new trial shall be made in writing, or if made orally in open court shall be reduced to writing, within thirty days of the date the order of sentence is entered." This filing deadline is mandatory, jurisdictional and may not be extended. Tenn. R. Crim. P. 45(b); <u>State v. Martin</u>, 940 S.W.2d 567, 569 (Tenn. 1997); <u>State v. Boxley</u>, 76 S.W.3d 381, 389-90 (Tenn. Crim. App. 2001). A trial judge does not have jurisdiction to hear and determine the merits of a motion for a new trial which has not been timely filed. The trial judge has no alternative but to dismiss the motion. An appellate court will not consider the issues raised in the motion unless the issue or issues would result in the dismissal of the prosecution against the accused. <u>State v. Dodson</u>, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Additionally, a trial judge's erroneous consideration of or ruling on a motion for new trial not timely filed does not validate the motion. <u>Martin</u>, 940 S.W.2d at 569 (citing <u>Dodson</u>, 780 S.W.2d at 780). Because the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal, a late filed motion for new trial will generally result in an untimely notice of appeal. <u>State v. Patterson</u>, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); <u>State v. Davis</u>, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987).

In the case herein, the judgment of conviction for the offense of felony murder was entered by the trial court on June 12, 2001. The motion for new trial was not filed until August 3, 2001, clearly more than thirty days after the entry of the judgment of conviction on the felony murder charge. The judgment of conviction for the offense of especially aggravated robbery was entered on August 3, 2001, the same day that the initial motion for new trial was filed.

-7-

The appellant argues that in order to assure the timely filing of the motion for new trial on the felony murder conviction, the appellant would be required to file two separate motions for new trial and two separate notices of appeal merely due to the fact that the judgments of conviction were entered on different days, in contravention of the spirit of Tennessee Rule of Criminal Procedure 33 (b). The State counters that the appellant waived all claims with respect to his conviction for felony murder except for sufficiency of the evidence due to his failure to timely file a motion for new trial.

We conclude that the motion for new trial filed on August 3, 2001 was untimely in regards to the felony murder conviction. In order for the motion to be timely, the appellant was required to file a motion for new trial within thirty days of the entry of the judgment of conviction, in this case, within thirty days of June 12, 2001. See State v. Benjamin Brown, No. W1999-00327-CCA-R3-CD, 2000 WL 1664226, at *6 (Tenn. Crim. App. at Jackson, Oct. 24, 2000) (holding that where judgment of conviction for felony murder was entered on April 30, 1999 and judgment of conviction for aggravated child abuse was entered on May 26, 1999, the motion for new trial filed on June 14, 1999 was untimely in regards to the felony murder conviction).

Because we determine that the motion for new trial was untimely in regards to the felony murder conviction, the subsequent notice of appeal was likewise untimely. Although the issue of the sufficiency of the evidence need not be raised in a motion for new trial in order to secure appellate review, see Boxley, 76 S.W.3d at 389-90, there is no automatic appeal of this issue to this Court. Either the timely filing of a notice of appeal must occur, or a waiver of the timely filing of a notice of appeal must be obtained from this Court in order to perfect an appeal. Tenn. R. App. P. 4(a). The appellant did not seek a waiver of the timely filing requirement in the "interest of justice" pursuant to Tennessee Rule of Appellate Procedure 4(a) until this Court required the appellant to file a supplemental brief addressing the timeliness of the motion for new trial, amended motion for new trial, and notice of appeal. We conclude that under the circumstances, the appellant has waived the issues presented for review in regards to the conviction for felony murder. However, due to the seriousness of the offense, we chose to address the question of the sufficiency of the evidence in the interests of justice.

Further, any issues raised in the amended motion for new trial and second amended motion for new trial were untimely in regards to the conviction for especially aggravated robbery. Amendments to the motion for new trial shall be allowed "liberally until the day of the hearing of the motion for new trial." Tenn. R.Crim. P. 33(b) (emphasis added); see also State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). An amendment to a motion for a new trial comes too late when it is filed after the trial judge has ruled upon the merits of the original motion. Washington, 658 S.W.2d at 146. A trial court may not expand its jurisdiction to hear a motion for new trial absent a specific statement by the defendant that the finality of his judgment should be suspended. See State v. Blunkall, 731 S.W.2d 72, 73-74 (Tenn. Crim. App. 1987).

The initial motion for new trial filed on August 3, 2001 was denied following a September 27, 2001 hearing. The appellant filed an amended motion for new trial on October 11, 2001 requesting a new trial for "errors, presently unknown which [would] be enumerated by counsel after

diligent review of the transcript of the proceedings." Subsequently, on March 6, 2002, the appellant filed a second amended motion for new trial specifically stating allegations of error at trial. Over the objection of the State, the trial court conducted a hearing on the second amended motion for new trial. The motion was denied in its entirety.

Consequently, the attempt by the appellant to amend the motion for a new trial on October 11, 2001 that failed to specifically state the grounds for a new trial and was filed after the trial court ruled on the initial motion for new trial was a nullity; the trial court did not have jurisdiction to hear and determine the merits of the grounds set forth in the amended motion. See Blunkall, 731 S.W.2d at 73-74. Accordingly, the only issues presented for our review in regards to the especially aggravated robbery conviction are those raised in the original motion for new trial filed on August 3, 2001. In regards to the especially aggravated robbery conviction, the following issues remain for our review: (1) the trial court erred in allowing the State to comment on the appellant's failure to produce a witness; (2) the evidence was insufficient to support the conviction for especially aggravated robbery; and (3) the trial court erred in failing to instruct the jury regarding the corroboration of accomplice testimony and out-of-court confession.

### Reference to Missing Witness in Closing Argument

The appellant contends that the prosecutor's reference in closing argument to a missing witness warrants reversal of his conviction. The State concedes that one of the requirements for commenting on a missing witness was not present, but argues that the State did not request a missing witness instruction and the appellant did not request a curative instruction following the prosecutor's statement and, therefore, the appellant failed to show plain error.

During the trial, the State introduced the appellant's recorded statement during which he claimed that he was picked up at the Expo Inn by a man named "Ted" and driven to Nashville about thirty minutes before the crime occurred. The appellant did not know "Ted's" last name. The State made the following statements during closing argument:

> What does . . . [the defendant] tell us in his statement that you all heard yesterday? "Well, I had this guy named Ted lined up to come and pick me up." Now, we want to believe, if we are going to listen to him, that it was Ted; because if he gives up Dante [Smith], he has got big problems, doesn't he? If he gives up Dante, then you or some other jury at some point in time are going to find out that the man that picked him up heard him say, "I think I just killed a man - just shot him."

Then the following exchange took place:

> STATE: Where is Ted? Where is Ted if he is telling the truth in that statement? Could there be a more important witness to hear from? If he is telling the truth and some guy picked up him and Ted - -

-9-

DEFENSE COUNSEL: Your Honor, please, I object. It is not proper argument. We have no burden of proof. . . . [the prosecutor] knows that.
STATE: I can argue a missing witness, and . . . [defense counsel] knows that.
THE COURT: I haven't heard anything improper yet. Watch it.
STATE: Where is Ted? Could there be a more important witness if he really exists? He would directly contradict what Dante Smith told us. He would be the one picking up not only him, but his cohort Mr. Shears, and taking them straight to Nashville to catch that flight.

Remember, that is what he told in the statement. We haven't heard from Ted on the stand. Ted could put him leaving the motel just like he tries to get us to believe prior in time to the homicide ever occurring. Pretty important witness. Where is he?

Get . . . [defense counsel] to explain to you, while he is up here bashing all of the people that you have heard from.

Again, during its rebuttal closing, the State commented:

Now, . . . [the appellant] has an excellent lawyer. They don't come any better than . . . [defense counsel]. But don't you know . . . [defense counsel] knows the importance of Ted? Don't you think, if Ted existed, that you would have heard from him on that witness stand?

Defense counsel did not renew his objection after the closing argument and did not request a curative instruction from the trial court.

A party may comment about an absent witness when the evidence shows that "(1) the witness had knowledge of material facts, (2) that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and (3) that the missing witness was available to the process of the Court for trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979); see also State v. Francis, 669 S.W.2d 85 (Tenn. 1984). When the State intends to argue the missing witness inference, the State should inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, can be held to establish whether the prerequisites set forth in Delk have been met. Francis, 669 S.W.2d at 90; State v. Philpott, 882 S.W.2d 394, 407 n.27 (Tenn. Crim. App. 1994). In any event, the burden is upon the proponent of the missing witness rule to establish the Delk prerequisites. State v. Thompson, 768 S.W.2d 239, 250 (Tenn. 1989). Moreover, "[d]ue to the potentially critical effect of the missing witness rule, the Delk requirements are to be strictly construed, particularly when the rights of a criminal defendant may be affected." Francis, 669 S.W.2d at 89. The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him.

In the case herein, the record does not indicate that all three Delk requirements were met. The record does not show that the State sought an advance ruling from the court to argue the missing witness instruction. Although the record somewhat establishes that the witness had knowledge of

material facts, no showing was made that a relationship existed between the witness and the appellant that would naturally incline the witness to favor the appellant or that the missing witness was available to the process of the court for the trial. Because the requirements outlined in Delk and Francis were not met, we conclude that the trial court erred in allowing the State to comment on the appellant's refusal to call the witness. The argument and comments by the State amounted to prosecutorial misconduct.

Because the trial court erred in allowing the prosecutor to argue the missing witness inference to the jury, we must now determine whether the error resulted in prejudice to the appellant. In Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), this Court set forth five factors to determine whether prosecutorial misconduct during closing argument prejudiced the defendant or was harmless beyond a reasonable doubt. These factors are:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

Id.; see also Francis, 669 S.W.2d at 91.

The record reflects that the only improper comments made by the State during closing arguments related to the missing witness inference. Because the comments were improper, the trial judge should have instructed the jury to disregard that part of the State's argument. However, the State's reference to the missing witness was not or extensive, and the State did not make any other improper comments. The prosecutor did not appear to be intentionally trying to unfairly prejudice the appellant. The appellant did not request a curative instruction. However, the trial judge did explain to the jury before closing arguments that the State had the burden of proof beyond a reasonable doubt. Further, the trial court fully and accurately instructed the jury on the difference between evidence and argument. Thus, we cannot conclude that the comment shifted the burden of proof from the State to the Defendant or unfairly prejudiced the appellant. See State v. Jack Thomas Norris, No. 03C01-9704-CR-00137, 1999 WL 222677, at *6 (Tenn. Crim. App. at Knoxville, Apr. 9, 1999), perm. to appeal denied (Tenn. Oct. 25, 1999); State v. Warner D. Brannon, No. 03C01-9508-CR-00233, 1996 WL 149384, at *4-5 (Tenn. Crim. App. at Knoxville, April 3, 1996), perm. to appeal denied (Tenn. Nov. 4, 1996). Therefore, we conclude that although the comment was improper, this error was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

### Sufficiency of the Evidence

On appeal, the appellant argues that the evidence was insufficient to support the convictions for felony murder and especially aggravated robbery because the accomplice testimony was not

-11-

sufficiently corroborated and the out-of-court confession was not sufficiently corroborated. Specifically, the appellant argues that Dante Smith, Edie Jones, and Deanna Jones were accomplices as a matter of law, and that their testimony needed to be corroborated because "a conviction may not be based upon the uncorroborated testimony of an accomplice." Further, the appellant argues that the "alleged out-of-court confession to Isaiah Dixon was required to be corroborated." As a result, the appellant argues that he was entitled to a judgment of acquittal on the offenses of felony murder and especially aggravated robbery. The State argues that the evidence is sufficient to support the convictions because the witnesses complained of are not accomplices and, therefore, their testimony did not require corroboration. Further, the State argues that the appellant waived this claim by failing to request a jury instruction on corroboration and by failing to raise an objection to the omission of an instruction on corroboration.

### A. Jury Instruction on Accomplice Testimony

In State v. Anderson, 985 S.W.2d 9 (Tenn. Crim. App. 1997), this Court addressed a factually similar scenario, one in which the trial court failed to include any accomplice instructions in the jury charge and in which the defendant failed to make a request for an accomplice instruction. Ultimately, we found that the defendant waived the issue by failing submit such a request based on the following reasoning:

> [O]ur supreme court has held that an instruction on the rule requiring corroboration of an accomplice's testimony is not fundamental. Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 42 (Tenn.1964); Arterburn v. State, 208 Tenn. 141, 344 S.W.2d 362, 364 (Tenn.1961). Upon the trial court's failure to instruct the jury regarding accomplice testimony and the requirement of corroboration, it becomes the obligation of the defendant to make a special request for the instruction. Cole v. State, 187 Tenn. 459, 215 S.W.2d 824, 826 (Tenn. 1948); State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App.1988). In the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction. Arterburn, 344 S.W.2d at 364; Cole, 215 S.W.2d at 826; State v. Blackwood, 713 S.W.2d 677, 681 (Tenn. Crim. App. 1986); State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984); Bolton v. State, 591 S.W.2d 446, 448 (Tenn. Crim. App. 1979).

Anderson, 985 S.W.2d at 17-18. In the case herein, the appellant similarly failed to make a special request for an accomplice instruction regarding the testimony of Dante Smith, Edie Jones, and Deanna Jones. Accordingly, he has waived this issue on appeal. See id.; see also State v. Michael Cammon, No. M2001-00592-CCA-R3-CD, 2002 WL 31414089, at *2 (Tenn. Crim. App. at Nashville, Oct. 25, 2002).

Furthermore, the evidence does not substantiate a basis for concluding that Dante Smith, Edie Jones, or Deanna Jones were accomplices in the commission of the crime at issue. An accomplice must do more than have guilty knowledge, be morally delinquent, or even participate in a distinct but

-12-

related offense. See State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990); Pennington v. State, 478 S.W.2d 892, 898 (Tenn. Crim. App. 1971). The test for whether a witness is also an accomplice is whether that witness could have been convicted of the offense. Lawson, 794 S.W.2d at 369. "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). There is no evidence that Deanna Jones, Edie Jones, or Dante Smith knowingly, voluntarily, and with common intent united with the appellant and/or co-defendant in the commission of the crime. Therefore, we determine that the trial court did not err by failing to instruct the jury that Deanna Jones, Edie Jones, and Dante Smith were accomplices as a matter of law.

### B. Jury Instruction on Out-of-Court Confession

The appellant next contends that the trial court erred in not giving a jury instruction on corroboration of confessions, pointing out that a confession must be corroborated by sufficient independent proof to support a guilty verdict. The State counters that the appellant waived this issue by failing to request a jury instruction on corroboration and failing to raise an objection to the trial court's omission of such an instruction. As a preliminary matter, we note that the appellant failed to object to the testimony of Isaiah Dixon on this specific ground at the time the testimony was presented. A defendant waives any objection to a witness's testimony by his failure to raise the issue at trial, thereby preventing the trial court an opportunity to rule on the matter before the witness begins his testimony before the jury. See Tenn. R. App. P. 36(a); see also State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (finding that a failure to object to otherwise inadmissible evidence will allow that evidence to be considered as if it were, in fact, fully admissible under the law of evidence); State v. Eldridge, 951 S.W.2d 775, 783-84 (Tenn. Crim. App. 1997) (stating that "[o]rdinarily, the failure to take available action to prevent or nullify the alleged error waives the issue").

However, even if not waived, this issue would not entitle the appellant to relief. We acknowledge that, as noted by our supreme court, "a conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti." Smith, 24 S.W.3d at 281. However, the corroborating evidence is sufficient if it tends to connect the defendant with the commission of the offense, even where the evidence is slight and entitled to but little weight when standing alone. Id. (citing Ricketts v. State, 241 S.W.2d 604, 606 (Tenn.1951)). In other words, the State must show that the crime charged has been committed through the criminal acts of the accused. Kyle v. State, 344 S.W.2d 537, 538 (Tenn. 1961). Therefore, in the instant case, the State was required to show that the defendant robbed the victim using a deadly weapon, causing serious bodily injury and that the victim was killed during the perpetration of the robbery. Isaiah Dixon testified that the appellant "told me that he was trying to pull a heist, and there was [sic] things that went wrong . . . . The man was taking too long, so he let him have it." Mr. Dixon also stated the appellant "let him [the clerk] have it" because "he was taking too much time to open the safe. He was stalling." The appellant told Mr. Dixon that he got a "couple thousand" in the heist, but that "he had went [sic] to jail shortly after that for like a warrant or something, and when he had got [sic] back to school, all the money wasn't there." While there were details that Isaiah Dixon either did not know or got factually incorrect about the incident, the

appellant's overall out-of-court confession to Isaiah Dixon is corroborated by the appellant's presence at the motel at the approximate time of the incident as well as the testimony of Edie Jones, Deanna Jones, and Dante Smith. This evidence is sufficient to corroborate the out-of-court confession. Accordingly, this issue is without merit.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

Because the appellant challenges the sufficiency in regards to his conviction for felony-murder, we will examine the evidence used to convict him of the underlying felony as well. In order to support the appellant's especially aggravated robbery conviction, the State had the burden at trial of introducing evidence to support each element of the offense. Especially aggravated robbery is robbery "[a]ccomplished with a deadly weapon" where "the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A "deadly weapon" is defined, in relevant part, as a "firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or seriously bodily injury." Tenn. Code Ann. § 39-11-106(a)(5). "Serious bodily injury" is defined as "bodily injury which involves: . . . [a] substantial risk of death; . . . [p]rotracted unconsciousness; . . . [e]xtreme physical pain; . . . [p]rotracted or obvious disfigurement; or . . . [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34).

The evidence introduced at trial, including the comments of the victim, established that the victim was working at the front desk of the Expo Inn when two tall, thin black men "from room 207" demanded money and then shot him. The victim ultimately died from three gunshot wounds. The appellant was observed with a handgun the night prior to the incident and stopped by Edie and Deanna Jones's room at least four times that night. The appellant and co-defendant were picked up by Dante Smith at the Expo Inn on the morning of December 20, 1998. Mr. Smith observed the two

men running out of the motel carrying a bin with a cash envelope inside it. Once in the car, the appellant claimed to have shot someone inside the motel. The register tape from the cash register indicated that the "no-sale" button was pushed around the same time as the victim's phone call to 9-1-1. Dante Smith later received $25-30 from the appellant and witnessed the appellant and co-defendant counting the money from the envelope he saw them exit the hotel lobby with the morning of the incident. Based on the evidence, it was reasonable for the jury to conclude that the appellant was guilty of especially aggravated robbery.

Felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect, or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2). Because the evidence was sufficient to establish that the defendant intentionally or knowingly committed especially aggravated robbery and the victim was killed in the perpetration of the robbery, the evidence was also sufficient to support the defendant's felony-murder conviction.

### Conclusion

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error and accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-15-